**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**DARRYL A. ROSS,**

**Plaintiff,**

**v.**

**CINCINATTI STATE POLICE DEPT., et al.,**

**Defendants.**

**Case No. 1:25-cv-380**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Bowman**

**OPINION AND ORDER**

Plaintiff Darryl Ross, acting pro se, seeks ten million dollars as compensation for Defendants' alleged violation of his Fourth Amendment rights. (Compl., Doc. 3). Not only is Ross pro se, he is also proceeding in forma pauperis. So Magistrate Judge Bowman screened Ross's Complaint under 28 U.S.C. § 1915(e)(2) and issued a Report and Recommendation. (R&R, Doc. 4). There, she recommends that the Court permit Ross's individual-capacity Fourth Amendment unreasonable search claim against Defendant Officer Matthew Bareswilt to proceed, but dismiss all other claims. (*Id.* at #33–34). Ross objected. (Objs., Doc. 6). In the meantime, Defendants also moved to dismiss the entire case. (Mot. to Dismiss, Doc. 7). Ross responded, (Doc. 10), and Defendants replied, (Doc. 11). So that motion is now ripe as well. Therefore, the Court addresses both. As to the former, the Court **ADOPTS** the R&R (Doc. 4) insofar as it recommends dismissing various claims, **OVERRULES** Ross's Objections (Doc. 6), and thus, as recommended, **DISMISSES** with prejudice all claims except Ross's Fourth Amendment unreasonable search claim against Officer Bareswilt in his

individual capacity. But then the Court also **GRANTS** Defendants' Motion to Dismiss (Doc. 7) as to that remaining claim. That dismissal, though, is without prejudice, and the Court **GRANTS** Ross thirty days in which to seek leave to file an amended complaint. As a result, the Court retains jurisdiction over this matter pending determination on any such motion, should Ross file one.

## BACKGROUND[1]

Defendant Officer Bareswilt is a member of the Cincinnati State Police Department (CSPD), the police force for Cincinnati State Technical and Community College. (Doc. 3, #26; Doc. 7, #45). On June 6, 2023, he initiated a traffic stop on Ross. (Doc. 3, #26). After some back and forth, Officer Bareswilt arrested Ross and searched his car. (*Id.*). While Ross's specific claims are not entirely clear, at bottom he believes that Officer Bareswilt (and the CSPD) violated his Fourth Amendment rights. (*Id.*). So, exactly two years after the arrest, Ross initiated this suit, asking the Court for leave to proceed in forma pauperis. (Doc. 1). The Magistrate Judge granted his request, (Doc. 2), and Ross filed his Complaint on the docket, (Doc. 3).

As with most Fourth Amendment claims, the details matter, so the Court begins by offering a more fulsome description of the events on the day in question. It all began when Officer Bareswilt pulled Ross over across the street from Cincinnati State College. (*Id.* at #26). Bareswilt initially told Ross that the reason for the stop

[1] Because the Court is ruling on Defendants' motion to dismiss regarding Ross's unreasonable search claim, the Court must accept the well-pleaded allegations in the Complaint as true, at least regarding that analysis. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). So while the Court relies on the Complaint's allegations to recount the case's background, it reminds the reader that they are just that—allegations.

was that Ross had a headlight out, which struck Ross as odd given that it was 1:36 p.m. (*Id.*). But then Officer Bareswilt allegedly changed his story, stating that he stopped Ross because he ran a redlight, which Ross denied. (*Id.*). The officer followed that up by asking multiple times to search the car, with Ross refusing each time. (*Id.*). Eventually, Officer Bareswilt directed Ross (and his passenger) to exit the car, and instructed Ross to leave his cellphone and wallet behind. (*Id.*). Officer Bareswilt then asked one more time to search the car, which Ross again refused. (*Id.*). Evidently, at this point, Bareswilt arrested Ross, or at least he handcuffed him and placed him in the back of the patrol vehicle, where he remained for more than two hours. (*Id.*). Bareswilt did not arrest Ross's passenger, even though that passenger was "wanted at the time [for a] misdemeanor." (*Id.*).

While Ross was in the police vehicle, Officer Bareswilt left the heat on and the windows up (despite it being June); the officer also ignored Ross's request to take him to the station so he could use the restroom. (*Id.*). And Officer Bareswilt refused that request despite Ross disclosing that he has high blood pressure, is diabetic, has a clogged artery by his heart, and has bad kidneys. (*Id.*). Ross eventually urinated in his shorts. (*Id.*). Finally, an officer from the Cincinnati police force came and told Bareswilt that to search the car it would need to be towed. (*Id.*). While these events were unfolding, Ross's former passenger returned to the scene with a third individual. (*Id.*). They saw Officer Bareswilt inside the car searching, but the officer "found nothing." (*Id.*). The interaction ended with Officer Bareswilt taking Ross to "district 5," where Ross posted bond (and presumably was charged with a crime—the

Complaint doesn't say). (*Id.*). Ross does not allege whether his car in fact was towed, saying only that he "went to pick up [the] car." (*Id.*). During this entire episode, Officer Bareswilt never asked for any identification documents or proof of insurance from Ross, nor did he turn on his body-camera. (*Id.*).

Because Ross sought to proceed in forma pauperis, the matter was referred under this Court's Cincinnati General Order 22-02 to a Magistrate Judge for initial handling. The Magistrate Judge began by granting Ross's request to proceed in forma pauperis. (Doc. 2). Then, that same day, invoking the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B), the Magistrate Judge issued an R&R recommending that Ross's Fourth Amendment unreasonable search claim against Defendant Officer Bareswilt in his individual capacity be allowed to proceed, but that all other claims be dismissed with prejudice for failure to state a claim upon which relief may be granted. (Doc. 4, #33).

To explain that a little more fully, the Magistrate Judge first infers (as noted, the Complaint is difficult to parse) that Ross's primary claim is that Defendants unreasonably searched his vehicle during a traffic stop in violation of his Fourth Amendment rights. (*Id.* at #31). Then, construing the allegations liberally in Ross's favor, she concludes he has set forth a "*potentially* cognizable claim against Officer Bareswilt in his individual capacity based on that officer's search and seizure of the vehicle and/or its contents in violation of the Fourth Amendment under 42 U.S.C. §1983." (*Id.* at #32 (emphasis in original)). So, "[o]ut of an abundance of caution," she recommends the Court let that claim proceed. (*Id.*). In contrast, the Magistrate Judge

finds that Ross fails to state any claim against the other named defendant, the Cincinnati State Police Department.[2] (*Id.*). The reason is simple: "a municipal police department is not an entity capable of being sued." (*Id.* (collecting cases)).

The Magistrate Judge also recommends this Court dismiss any claims asserted against the police department or Officer Bareswilt in his official capacity. (*Id.*). "[A]ny official capacity claim must be dismissed based on [Ross's] failure to allege sufficient facts to plausibly suggest that his rights were violated by a City of Cincinnati Police Department custom or policy as would be required to hold defendants liable in an official capacity." (*Id.* at #33 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978))). Finally, the Magistrate Judge, "does not construe the [C]omplaint as stating any type of claim of false arrest or wrongful imprisonment arising out of [Ross's] arrest or subsequent court proceedings. [Ross's] allegations focus heavily on the search of the vehicle and are cursory or nonexistent with respect to any subsequent proceedings." (*Id.*). In other words, Ross does not appear to be contesting the validity of his arrest (or a subsequent conviction). (*Id.*). Separately, citing 28 U.S.C. § 1915(a), the Magistrate Judge finds that an appeal of any Order adopting the R&R would not be taken in good faith and therefore recommends denying Ross leave to appeal in forma pauperis. (*Id.* at #34).

[2] The Magistrate Judge assumed that naming the CSPD as a defendant was an error and that Ross intended to name the City of Cincinnati's Police Department. (Doc. 4, #32). But the Motion to Dismiss clarifies that Officer Bareswilt is employed by Cincinnati State Technical and Community College. (Doc. 7, #45). The college has its own police force—the Cincinnati State Police Department. (*Id.*). But while Ross named the "correct" entity, a college police department is still not a juridical entity subject to suit. (*See* Doc. 4, #32).

The R&R advised Ross that he had 14 days to serve and file specific written objections. (*Id.* at #35). Ross did—sort of. (Doc. 6). His "objections" largely reiterate (1) his request for ten million dollars in monetary damages against Officer Bareswilt, (*id.* at #38); (2) his allegations that he was handcuffed in the backseat with the heat on, despite his health issues of which Ross attached proof, (*id.* at #38–39); and (3) that Officer Bareswilt did not have his body-camera on, (*id.* at #38). Beyond that, he argues that Officer Bareswilt had no probable cause to stop or search his vehicle, specifically stating that there was no video of a traffic violation or of his interactions with the officer, only video of him sitting in the back of the police car. (*Id.*).

There is one more piece to the puzzle. Before this Court ruled on the R&R and Objections, Defendants filed a joint Motion to Dismiss. (Doc. 7). There, Defendants argue that (1) the Eleventh Amendment bars Ross's claims against the Cincinnati State Police Department and Matthew Bareswilt in his official capacity (i.e., the claims the Magistrate Judge recommends dismissing), and (2) that Ross fails to state a claim against Officer Bareswilt in his individual capacity (i.e., the claim the Magistrate Judge recommends allowing to proceed). (*Id.* at #46–50). Ross responded to that motion by asking the Court to "move forward on above case number" and to not to dismiss it because this case "holds weight for justice." (Doc. 10, #58). He asks "to be able to prove" that Defendants violated his Fourth Amendment rights and outlines the evidence he plans to present (or that he is requesting, it's not clear). (*Id.*). Defendants replied. (Doc. 11).

The Court will address the R&R and Motion to Dismiss in turn.

## LEGAL STANDARD

### A. The Court Reviews Unobjected Portions of an R&R for Clear Error and Objected Portions De Novo.

Under Federal Rule of Civil Procedure 72(b)(3), "district courts review a[] [report and recommendation] de novo after a party files a timely objection." *Bates v. Ohio Dep't of Rehab. & Corr.*, No. 1:22-cv-337, 2023 WL 4348835, at *1 (S.D. Ohio July 5, 2023). But that de novo review extends only to "any portion to which a proper objection was made." *Id.* (quotation omitted). In response to such an objection, "the district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* (quoting Fed. R. Civ. P. 72(b)(3)) (cleaned up).

By contrast, if a party makes only a general objection, that "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A litigant must identify each issue in the report and recommendation to which he objects with sufficient clarity for the Court to identify it, or else the litigant forfeits the Court's de novo review of the issue. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

That said, Ross is proceeding pro se. A pro se litigant's pleadings should be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). But pro se litigants still must comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113

(1993). And "[t]he liberal treatment of pro se pleadings does not require lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

For any unobjected portions of an R&R, "the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases).

**B. The Court Reviews Whether the Complaint Presents Facts Sufficient to State a Claim to Relief at the Motion to Dismiss Stage.**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construes the complaint in the light most favorable to the plaintiff." *Bassett*, 528 F.3d at 430 (cleaned up).

## LAW AND ANALYSIS

### A. The Court Adopts the Report & Recommendation to the Extent that It Recommends Dismissing All Claims but One.

The Court addresses the R&R first. On that front, the Court begins by noting that, while Ross attempted to object, he offered only general objections that "ha[ve] the same effect[] as would a failure to object." *Howard*, 932 F.2d at 509. Ross does not identify any portion of the R&R to which he objects, instead he simply asks for the opportunity to move his case forward. (Doc. 6). Key here, he did not object to the Magistrate Judge's finding that his primary claim is for an unreasonable search of his vehicle, nor did he object to the subsequent recommendation to dismiss with prejudice all claims (if any) that are based on theories other than unreasonable search. (*Id.*). Nor, for that matter, did he object to the dismissal with prejudice of any official-capacity claims or claims against the CSPD. (*Id.*). So the Court reviews those determinations for clear error. *Redmon*, 2021 WL 4771259, at *1.

The Court finds no clear error here. The Court agrees that a police department is not an entity capable of being sued, and so CSPD should be dismissed as a defendant. *See Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). Like other police forces, the CSPD is not a separate entity; rather it is a subdivision of Cincinnati State Technical and Community College. *See id.*; (*see also* Doc. 7, #45). If Ross is seeking to bring a claim against Officer Bareswilt's employer, then the college, not CSPD, is the proper defendant. *Id.*

But regardless of the proper defendant, a suit against Officer Bareswilt's employer would be equivalent to suing the officer in his official capacity, *see Matthews*

*v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994), and the Court agrees with the Magistrate Judge that Ross failed to plead sufficient facts to support such a claim. (Doc. 4, #32–33). Official capacity claims typically require a plaintiff to demonstrate that his or her rights were violated by a state custom or policy. *See Monell*, 436 U.S. at 690–91. Ross pleads no facts giving rise to an inference that that occurred here. In sum, the Court agrees with the Magistrate Judge that under the facts alleged, Ross could bring, at most, a claim against Officer Bareswilt in his individual capacity. (Doc. 4, #32–34).

Separately, the Court agrees with the Magistrate Judge that, aside from the unreasonable search of his vehicle, Ross does not state any other type of Fourth Amendment claim—e.g., false arrest, wrongful imprisonment, or excessive force. (*Id.* at #33). True, the Complaint itself is not altogether revealing as to the contours of Ross's claims, and the Magistrate Judge's conclusion that Ross's primary claim was for unreasonable search involved a generous construction and some interpretation on her part. (*Id.* at #32). It is not inconceivable that the Magistrate Judge interpreted the claim incorrectly, and that Ross actually intended to bring different kinds of Fourth Amendment claims. But Ross's lack of objections on that subject is noteworthy. If Ross, say, intended to bring a claim for excessive force based on his confinement in the police car, he had ample opportunity to offer that clarification. And the Court finds no clear error in the Magistrate Judge's interpretation of the Complaint. Accordingly, the Court adopts the recommended dismissals in their entirety, therefore dismissing the Cincinnati State Police Department as a defendant

and dismissing all claims against Officer Bareswilt except for Ross's individual capacity Fourth Amendment claim for unreasonable search of his vehicle (which the Court addresses separately below). (*Id.* at #33–34). Moreover, because the Court is adopting the R&R, that means these dismissals are with prejudice.[3] True, the dismissals are based on pleading defects, and in that context courts often dismiss, at least the first time, without prejudice. But the Court cannot say it is clear error to dismiss with prejudice here. And given Ross's failure to provide specific objections, clear error is the standard of review that applies.

**B. The Court Grants Defendants' Motion to Dismiss as to the Remaining Claim.**

Apart from the screening R&R, Defendants move the Court to dismiss all of Ross's claims with prejudice. (Doc. 7, #50). First, Defendants argue that Ross's claims against the CSPD and Officer Bareswilt in his official capacity fail because the Eleventh Amendment bars them. (*Id.* at #46–47 (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984))). Second, Defendants argue that inasmuch as Ross is attempting to assert a Fourth Amendment claim against Officer Bareswilt in his individual capacity, he does not state a claim for which relief can be granted. (*Id.* at #48–50). Because the Court already has dismissed all claims against the CSPD and Officer Bareswilt in his official capacity by adopting the Magistrate Judge's R&R, the Court only addresses the latter.

---

[3] Because the Magistrate Judge did not construe the Complaint as bringing an unreasonable *arrest* claim, that potential claim is not being dismissed with prejudice. (*Id.* at #33). As discussed below, the Court is granting Ross thirty days to seek leave to file an amended complaint if he in fact does intend to bring such a claim.

The Court agrees with Defendants and dismisses Ross's final claim. Put simply, he has not alleged a viable Fourth Amendment claim. As discussed above, it is difficult to describe what Fourth Amendment claim Ross is even bringing. While the greatest focus seems to be on the eventual "illegal" search of his car by Officer Bareswilt, he does not explain why that search was unreasonable, nor how it injured him. (*See generally* Doc. 3); *see also Taylor v. City of Saginaw*, 922 F.3d 328, 334 (6th Cir. 2019) ("The Fourth Amendment does not proscribe all searches, 'but only those that are unreasonable.'" (quoting *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619, (1989))).

True, Ross does allege that his vehicle was searched without his consent. (Doc. 3, #26). In fact, Ross states that Officer Bareswilt asked for permission to search his car four times, with Ross denying it each time. (*Id.*). Only after Ross was handcuffed and placed in the back of the police car was the car searched. (*Id.* (describing how the other occupant of his vehicle and a third witness returned to the scene and saw "offi[c]er Bareswilt inside [Ross's] car illegal[ly] searching")). In his Objections to the R&R, Ross reiterates that he was not even told what he was being charged with, but the "officer just kept wanting to illegal[ly] search [the] car" despite Ross "say[ing] no many times." (Doc. 6, #38). And, except in certain cases, the Supreme Court has long considered "a search of private property without proper consent … 'unreasonable' unless it has been authorized by a valid search warrant." *Camara v. Mun. Ct. of the City and Cnty. Of San Francisco*, 387 U.S. 523, 528–29 (1967).

At the same time, that Ross did not consent to the search of his vehicle does not end the inquiry. First, Ross does not allege that there was no warrant. (Doc. 3, #26). Second, perhaps more to the point, and as Defendants observe, one of the exceptions to the warrant requirement is an inventory search when police lawfully take custody of a vehicle. (Doc. 7, #50). *See United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013). And here, it appears that police may have impounded Ross's vehicle. (*See* Doc. 3, #26 ("Cincinnati Police told officer Bareswilt the only [way] to search [Ross's] car was to tow it."; "[Ross] and others went to pick up [the] car."). Recall that Officer Bareswilt arrested Ross and took him "to jail to post bond," (*id.*), so an impoundment may have been reasonable. *See Hockenberry*, 730 F.3d at 658–59. And separately, "[p]olice may conduct a search of a vehicle incident to a lawful arrest 'when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *United States v. Alexander*, 954 F.3d 910, 917 (6th Cir. 2020) (cleaned up) (quoting *Arizona v. Gant*, 556 U.S. 332, 343, 347 (2009)). Here, the officer arrested Ross (although Ross does not state for what underlying crime), and Ross has not contested that arrest. Nor has he pleaded any other facts plausibly suggesting that neither of these warrant exceptions apply. (Doc. 3, #26).

The closest Ross comes to pleading facts making it plausible that the search was unjustified are his statements in his Objections to the R&R that "Officer Bareswilt had no probable cause to stop [him]" and "no probable cause to search [his] car." (Doc. 6, #38). But those assertions do not get Ross across the finish line. Sure, the officer needed probable cause to execute a lawful arrest (and subsequent

impoundment) or search of Ross's vehicle. *United States v. Lay*, 13 F. App'x 265, 266 (6th Cir. 2001). But a bare allegation that the officer lacked probable cause is a legal conclusion, and under the *Iqbal/Twombly* standard, it receives no weight. *Muncy v. Muncy*, No. 5:24-272, 2025 WL 992683, at *5 (E.D. Ky. Apr. 2, 2025) (citing *Rice v. Jones*, No. 22-3972, 2023 WL 8369996, at *2 (6th Cir. June 23, 2023)). Even more to the point, the most reasonable inference to draw from the facts presented in Ross's Complaint is that the search itself occurred incident to a vehicle impoundment that followed Ross's arrest. (*See* Doc. 3, #26). Thus, to challenge that search, Ross would first need to challenge *the arrest* itself, which he has not done (at least so far as the Court can tell). To be sure, Ross alleges that the initial traffic stop was unjustified, which could potentially serve as a basis for challenging his arrest, but he fails to allege facts making that connection. (*Id.*; Doc. 6, #38).

So the Court, finding that Ross fails to state a claim for relief, grants the Defendants' Motion to Dismiss (Doc. 7) as to Ross's remaining claim. Accordingly, the Court dismisses the entire Complaint. But because these are pleading defects, the Court does so without prejudice. And, because it is possible that Ross could plead a viable Fourth Amendment claim based on an unlawful arrest (as opposed to merely an unlawful search), the Court will grant him thirty days in which to seek leave to file an amended complaint (attaching the proposed amended complaint), should he wish to do so.

## CONCLUSION

The Court **OVERRULES** Ross's Objections (Doc. 6) and, finding no clear error, **ADOPTS** the R&R's (Doc. 4) recommended dismissals. The Court therefore **DISMISSES** all claims except Ross's unreasonable search claim against Defendant Matthew Bareswilt in his individual capacity **WITHOUT PREJUDICE**. But as to that remaining claim, the Court further **GRANTS** Defendants' Motion to Dismiss (Doc. 7), and thereby **DISMISSES WITHOUT PREJUDICE** the Complaint (Doc. 3) in its entirety. That said, the Court **GRANTS** Ross thirty days (on or before February 13, 2026) in which to seek leave to file an amended complaint, attaching the proposed complaint. The Court retains jurisdiction over this matter pending determination on any such motion, should Ross file one.

**SO ORDERED.**

January 14, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**